IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLEN PURDY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CIPPCO INC., et al. | : | NO.  24-5126 |

## MEMORANDUM

**Padova, J.**                                                                                                         **April 2, 2025**

Construction worker Glen Purdy claims that his employer and a labor union worked together to deny him union membership on account of his race and then fired him when he complained.  In this action, Purdy asserts race discrimination and retaliation claims against his employer, CIPPCO, Inc.; the union, Laborers Local 332 ("LIUNA"); and affiliated individuals under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  LIUNA and its vice president and business agent John McCarty, Jr.  ("the Union Defendants") have moved to dismiss the § 1981 discrimination claim against them pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, we grant the Motion to Dismiss with respect to that claim and grant Plaintiff leave to amend it.

**I.       BACKGROUND**

The Amended Complaint alleges the following facts.  Plaintiff is a black (African-American) male.  (Am. Compl. ¶ 14.)  On March 11, 2024, Plaintiff was hired by Defendant CIPPCO, Inc., a Philadelphia-based construction firm, as a full-time construction laborer.  (Id. ¶¶ 15-17.)  Because Plaintiff was hired by referral with no interview, CIPPCO only became aware of his race when he began working.  (Id. ¶ 15.)  Plaintiff worked at various job sites, primarily doing demolition work.  (Id. ¶¶ 18-19.)  He was typically managed by Field Superintendents Joseph Fritsch and Nicholas Hopkin, and indirectly managed by CIPPCO's president and CEO,

Defendant Joseph Cipolloni, III. (Id. ¶ 20.) Fritsch, Hopkin, and Cipolloni are all Caucasian. (Id. ¶ 21.) Plaintiff also had significant contact with Defendant McCarty, who is Caucasian as well. (Id. ¶ 25.) Plaintiff was one of the only black CIPPCO workers at his worksites. (Id. ¶ 22.) Plaintiff was an outstanding worker who was never counseled, warned, or disciplined during his time at CIPPCO. (Id. ¶ 37.) He was praised for being attentive, hardworking, and caring, and "was more timely, available, helpful, and skilled or hardworking than many other newly hired non-black employees." (Id. ¶¶ 23, 37.)

CIPPCO works closely with Defendant LIUNA, co-managing employees and collaborating in decision-making with respect to employee placement and retention, as well as union induction, working conditions, and terminations. (Id. ¶ 33.) Plaintiff was supposed to be inducted into LIUNA after working for CIPPCO for 90 days, which would have afforded him a $7-10 per hour pay increase, as well as union benefits, pension contributions, job protections, seniority, and the assurance of ongoing employment. (Id. ¶¶ 23, 28.) This "90-day timeframe was supposed to be carefully monitored, regulated, and to warrant immediate inclusion in [LIUNA] with all attendant pay increases and benefits." (Id. ¶ 29.) When Plaintiff was not inducted into LIUNA after 90 days, he "began to politely ask numerous management personnel why he was not being treated as a union member or being given a union book (despite having union deductions from his payroll)." (Id. ¶ 27.) Indeed, Plaintiff was not supposed to perform work for CIPPCO after 90 days if for any reason he was not a union member. (Id.) Plaintiff learned that similarly situated non-black employees immediately became union members after working for CIPPCO for 90 days. (Id. ¶ 29.) At one point, when a union agent came to Plaintiff's worksite to confirm that all eligible workers were properly enrolled in the union, "Plaintiff was yelled at, concealed, and told to get on a bicycle and ride to a different work site." (Id. ¶ 30.)

In the final two months of his employment with CIPPCO, Plaintiff became vocal about his concerns, complaining no less than eight times to various managers at CIPPCO and LIUNA that he was being kept out of the union for discriminatory reasons. (Id. ¶¶ 32, 34.) Plaintiff stated: "I am the only black employee," "I can't help but feel this [is] racial," and "white employees get their union book at 90 days." (Id. ¶ 34.) Plaintiff specifically told Defendant Cipolloni "I am the only African American," complaining that he was not getting union benefits or membership, to which Cipolloni responded that Plaintiff should be patient. (Id. ¶ 35.) Plaintiff also complained to Defendant McCarty on August 2, 2024 that "I am the only black employee, and I am not getting a union card." (Id.) Three days later, on August 5, 2024, Plaintiff was terminated after 148 days of employment with CIPPCO. (Id. ¶¶ 16, 17, 26.) CIPPCO and LIUNA colluded to deny Plaintiff union membership and benefits because of his race, and to terminate him when he complained about this discrimination. (Id. ¶¶ 36-38.) Cipolloni and McCarty personally coordinated, orchestrated, and were responsible for the violations of § 1981 asserted in the Amended Complaint. (Id. ¶ 38.)

On September 25, 2024, Plaintiff filed a Complaint in this Court, which he amended on November 26, 2024. The Amended Complaint contains two claims. Count I asserts a racial discrimination and retaliation claim against all Defendants pursuant to § 1981. Count II asserts a racial discrimination and retaliation claim against Defendant CIPPCO pursuant to Title VII. Defendants CIPPCO and Cipolloni answered the Amended Complaint, while the Union Defendants filed the instant Motion, seeking dismissal of the discrimination claim against them in Count I for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).[1]

---

[1] While the Union Defendants' Motion appears to seek dismissal of the Amended Complaint as a whole, their Memorandum only addresses the § 1981 discrimination claim asserted

## II.   LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).  We "accept[] all well-pleaded allegations in the complaint as true and view[] them in the light most favorable to the plaintiff."  Talley v. Pillai, 116 F.4th 200, 206 (3d Cir. 2024) (quoting Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  However, "we need not 'accept as true a legal conclusion couched as a factual allegation.'"  Host Int'l, Inc. v. Marketplace PHL, LLC, 32 F.4th 242, 248 (3d Cir. 2022) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (citation omitted).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  In the end, we

---

against them in Count I.  We therefore conclude that the instant Motion does not pertain to the § 1981 retaliation claim in Count I, and we do not address that claim here.

will grant a motion to dismiss pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

## III.   DISCUSSION

Section 1981 "prohibits racial discrimination in the making and enforcement of contracts." Brown v. Philip Morris Inc., 250 F.3d 789, 796 (3d Cir. 2001). It extends to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To state a claim under § 1981 in this context, a complaint "must allege facts in support of the following elements: (1) [he] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning . . . the right to make and enforce contracts." Brown, 250 F.3d at 797 (quoting Yelverton v. Lehman, Civ. A. No. 94-6114, 1996 WL 296551, at *7 (E.D. Pa. June 3, 1996)). The Union Defendants concede that the Amended Complaint alleges that Plaintiff is a member of a racial minority. (See Union Defs. Mem. at 4 (citing Am. Compl. ¶ 14).) Nonetheless, they contend that Plaintiff's discrimination claim against them fails because the Amended Complaint does not plausibly allege that they acted with "intent to discriminate on the basis of race." Brown, 250 F.3d at 797 (quotation omitted).

A plaintiff "is not required to *prove* discriminatory intent at the motion to dismiss stage, rather [he] 'need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of [it].'" Bagic v. Univ. of Pittsburgh, 773 F. App'x 84, 87 (3d Cir. 2019) (second alteration in original) (emphasis added) (quoting Fowler, 578 F.3d at 213). This requirement may be satisfied by allegations regarding "comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions

5

by [a plaintiff's] supervisors suggesting racial animus." Golod v. Bank of Am. Corp., 403 F. App'x 699, 702 n.2 (3d Cir. 2010) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-12 (2002)).

Plaintiff argues that this element is satisfied by the Amended Complaint's allegations of disparate treatment, namely that "non-black employees similarly situated to Plaintiff were immediately becoming union members with all aforesaid benefits and pay increases at their respective 90-day marks." (Am. Compl. ¶ 29.) The Amended Complaint alleges that LIUNA was directly involved in this process of inducting new union members and that Plaintiff made LIUNA aware of his concerns about discrimination. (Id. ¶¶ 33-34.) We recognize that "'discrimination may be inferred based on comparator evidence – evidence that defendant treated "similarly situated" individuals not within plaintiff's protected class more favorably than it treated plaintiff.'" Fisher v. Cath. Soc. Servs. of Archdiocese of Phila., Civ. A. No. 18-4653, 2019 WL 3731688, at *5 (E.D. Pa. Aug. 8, 2019) (quoting Darby v. Temple Univ., 216 F. Supp. 3d 535, 542 (E.D. Pa. 2016)). "[C]omparator employees must be similarly situated in all relevant respects," considering "factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." Wilcher v. Postmaster Gen., 441 F. App'x 879, 882 (3d Cir. 2011) (citations omitted).

The Amended Complaint does not allege any facts about the non-black employees inducted into the union that would raise a reasonable expectation that discovery would reveal evidence that they were similarly situated to Plaintiff. Instead, it merely states in a conclusory fashion that those employees were "similarly situated." (Am. Compl. ¶ 29.) In such circumstances, courts in this district have found that plaintiffs failed to plausibly allege discriminatory intent based on comparator evidence. See Fisher, 2019 WL 3731688, at *5 ("Merely alleging [that other similarly

6

situated white employees were given preferential treatment] without identifying any comparators or how they were similarly situated is exactly a '[t]hreadbare recital[ ] of the elements of a cause of action' that Iqbal repudiates." (second and third alterations in original) (quoting Iqbal, 556 U.S. at 678)); see also Golod, 403 F. App'x at 702 (affirming dismissal of § 1981 discrimination claim where plaintiff "did not provide any characteristics of those individuals who received the promotions to which she alleges she was entitled"); cf. Raven v. City of Philadelphia, Civ. A. No. 15-4146, 2017 WL 930316, at *4 (E.D. Pa. Mar. 8, 2017) (concluding in equal protection context that the "general assertion that the [defendant] did not subject similarly situated white police officers to the same treatment as [the plaintiff] with regard to their Service Connected Disability Pensions is a 'conclusory statement,' which cannot withstand a motion to dismiss" (citation omitted)).  We therefore conclude that the Amended Complaint does not plausibly allege the second element of Plaintiff's prima facie claim, that the Union Defendants acted with discriminatory intent.  Accordingly, we grant the Motion to Dismiss on this ground.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the Amended Complaint fails to state a claim of racial discrimination against the Union Defendants pursuant to § 1981.  We therefore grant the Motion to Dismiss Count I with respect to that claim only.

Federal Rule of Civil Procedure 15(a) provides that "[t]he Court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(a).  While "'prejudice to the nonmoving party is the touchstone for denial of an amendment,' denial may also be 'based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment.'"  Chestnut v. Finck, 722 F. App'x 115, 118 (3d Cir. 2018) (quoting Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993)).

Although Plaintiff has already amended his Complaint once, this case is still in its earliest stage and we perceive no prejudice to Defendants from allowing Plaintiff to further amend in light of our holding. Moreover, there is no indication that Plaintiff has acted in bad faith, has acted with dilatory motive, has unduly delayed litigation, or has repeatedly failed to cure deficiencies by amendment, or that amendment would be futile. We therefore grant Plaintiff leave to amend his discrimination claim to address the deficiency identified above. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.